UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHICAGO INSURANCE CO.,

      Plaintiff,

v.

ROBERT L. WIGGINS, WIGGINS
& ASSOCIATES, and AMERICAN
TITLE OF MICHIGAN, INC.

      Defendants.

and

COMMONWEALTH LAND TITLE
INSURANCE CO.,

      Intervening Defendant.
_____/

Case No. 02-73801
Honorable Patrick J. Duggan

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on September 9, 2005.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                   U.S. DISTRICT COURT JUDGE

Plaintiff Chicago Insurance Company ("Company") filed this lawsuit against Defendants Robert L. Wiggins, Wiggins & Associates, and American Title of Michigan, Inc., seeking to rescind Lawyers Professional Liability Policy No. LWB2015299 (the "Policy") based on alleged material misrepresentations by Robert Wiggins ("Wiggins") in

1

the application for insurance. Sometime in 2002, American Title of Michigan, Inc. ("American Title") filed for bankruptcy. On April 4, 2003, this Court issued an order joining American Title's Chapter 7 Trustee Charles J. Taunt (the "Chapter 7 Trustee") as a defendant. Commonwealth Land Title Insurance Company ("Commonwealth") intervened as a defendant in this action on December 8, 2004.[1] On March 29, 2005, the Chapter 7 Trustee filed a counterclaim against Chicago, seeking a declaratory judgment that Chicago is obligated to indemnify and defend American Title in claims brought against it. The Chapter 7 Trustee also seeks damages for Chicago's breach of its insurance contract. Presently before the Court is Chicago's motion for summary judgment and Commonwealth's counter-motion for summary judgment with respect to Chicago's action to rescind the Policy.[2] The Court held a hearing on the parties' motions on September 8, 2005.

**Factual Background**

In May 1996, Wiggins executed an application for a policy of professional liability insurance from Chicago. As relevant to the pending lawsuit, the application asked the

---

[1] Defendant American Title was an agent of Commonwealth for the purpose of issuing title insurance, commitments, policies and endorsements on real estate in Michigan in Commonwealth's name. American Title and/or Robert Wiggins acted as closing agent in connection with the real estate transactions in which Commonwealth title insurance was issued and claims have been filed against Commonwealth based on their actions as closing agent.

[2] The Chapter 7 Trustee also filed a cross-motion for summary judgment; however that motion merely adopts and incorporates Commonwealth's motion.

following questions:

> Has [any] lawyer listed on the Insured Supplement:
>
> 12. a. Had his/her legal license or authority to practice law revoked?
>
> b. Been subject to disciplinary action by any state or local bar or ABA?
>
> c. Been subject to any fine, reprimand or criminal penalty related to performance of professional services?
>
> If "yes" to any of these above, please explain below:

*See* Chicago's Mot. Ex. A.  Wiggins answered "no" to all three of these questions on his application.  *See id*.  Chicago, through its Michigan agent Kelter-Thorner (now Proquest), thereafter issued the Policy, covering the policy period of April 23, 1996 to April 23, 1997.

Wiggins executed renewal applications for each successive policy year from April 23, 1997 through April 23, 2002.  *See* Chicago's Mot. Ex. C.  The same questions set forth above were asked in the renewal applications.  Wiggins answered "no" to all three of these questions on the renewal applications.

Chicago claims that on or about September 4, 2002, it concluded that Wiggins' answers to the above questions were false.  Specifically, Chicago discovered that on April 15, 1989, Wiggins had been reprimanded by a hearing panel of the Attorney Disciplinary Board as a result of his convictions for resisting and obstructing a police officer, being a habitual offender, possession of a firearm while intoxicated, and using cocaine.  *See* Chicago's Mot. Ex. F ¶ 19 and Ex. G.  Chicago further learned that on October 13, 1993,

Wiggins had been suspended from the practice of law by a hearing panel of the Attorney Disciplinary Board as a result of his conviction and imprisonment on the charge of resisting and obstructing a police officer. *See id*. Additionally, on July 24, 1994, Wiggins had entered into a consent order with the Attorney Grievance Commission for a reprimand from a hearing panel of the Attorney Disciplinary Board stemming from Wiggins filing frivolous lawsuits on behalf of himself and his wife. *See id*.

## Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient

evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

## Parties' Arguments

Chicago seeks summary judgment with respect to its claim for rescission, arguing that there is no genuine issue of material fact that Wiggins made material misrepresentations in the initial application and renewal applications for the Policy and that Chicago would not have issued the Policy if it had known the truth about Wiggins' disciplinary history. Commonwealth responds that the questions at issue, as worded, did not require an affirmative response by Wiggins. Additionally, Commonwealth claims that Chicago fails to demonstrate that it would not have issued the Policy if Wiggins had answered the relevant questions differently. Commonwealth therefore asks the Court to dismiss Chicago's claim for rescission.

## Applicable Law and Analysis

Under Michigan law, "where an insured makes a material misrepresentation in the application for insurance . . . the insurer is entitled to rescind the policy and declare it void ab initio." *Lake States Ins. Co. v. Wilson*, 231 Mich. App. 327, 331, 586 N.W.2d 113, 115 (1998)(citations omitted). This proposition holds even in cases of "innocent

5

misrepresentation," so long as the insurer relies upon the misstatement. *Lash v. Allstate Ins. Co.*, 210 Mich. App. 98, 103, 532 N.W.2d 869, 872 (1995). Additionally, an insurance policy may be voided based on a material misrepresentation that affected the insurer's risk, even if no causal relation exists between the misrepresentation and the loss sustained under the policy. *Wickersham v. John Hancock Mut. Life Ins. Co.*, 413 Mich. 57, 60, 318 N.W.2d 456, 457 (1982).

"A 'misrepresentation' in the insurance context is a statement as to past or present fact, made to the insurer by or with the authority of the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement for the making thereof." *Oade v. Jackson Nat'l Life Ins. Co. of Mich.*, 465 Mich. 244, 251, 632 N.W.2d 126, 130 (2001). A misrepresentation is "material" when it would, if known, cause the insurer to reject the applicant outright or prompt the insurer to charge a higher premium for the policy. *Id.* at 254, 632 N.W.2d at 131.

When a court evaluates the questions posed in an insurance application to determine whether the insured made a misrepresentation in answering the question, the court must apply general rules of interpretation applicable to insurance contracts. For example, under Michigan law, the construction of a contract is a question of law for the court. *Morley v. Auto. Club of Michigan*, 458 Mich. 459, 465, 581 N.W.2d 237 (1998). The preliminary question for the court is whether the language in the question is ambiguous. "'A contract is ambiguous when its terms are reasonably and fairly susceptible to multiple understandings and meanings.'" *Old Line Ins. Co. of Am. v.*

6

*Garcia*, 411 F.3d 605, 613 (6th Cir. 2005)(quoting *Equitable Life Assurance Soc'y of the U.S. v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998)). In determining whether any terms used are ambiguous, the court's focus should be on how the question would be interpreted by the "ordinary lay mind" or "average layman," rather than on how the particular insured interpreted the question. *New York Life Ins. Co. v. Modzelewski*, 267 Mich. 293, 296, 255 N.W. 299 (1934). While the court's focus generally should be on the actual language used in the insurer's question, the Michigan Supreme Court recently confirmed that courts may consider extrinsic evidence demonstrating an ambiguity that does not appear on the face of the contract:

> [A]ttendant facts and circumstances explain the context in which the words were used and may reveal the meaning the parties intended. In this respect, the detection of a latent ambiguity unquestionably requires consideration of factors outside the policy itself. Therefore, extrinsic evidence is admissible to prove the existence of the ambiguity, and, if a latent ambiguity is proven to exist, extrinsic evidence may then be used as an aid in the construction of the contract.

*City of Grosse Pointe Park v. Mich. Mun. Liab. and Property Pool*, 473 Mich. 188, — N.W.2d —, 2005 WL 1684958, at *6 (July 19, 2005).

If the terms used in the application questions are unambiguous, "the court applies the terms in their "plain, ordinary, and popular sense." *Old Line Ins. Co. of Am.*, 411 F.3d at 613 (citing *Clevenger v. Allstate Ins. Co.*, 443 Mich. 646, 654, 505 N.W.2d 553 (1993)). Where an ambiguity exists, however, the questions are to be construed liberally in favor of the insured. *Id*. (citing *Mich. Mut. Ins. Co. v. Dowell*, 204 Mich. App. 81, 87,

514 N.W.2d 185 (1994))(providing that "Michigan has a long history of liberally construing questions and answers in an application for insurance in favor of the insured"). In other words, "the failure to use clear language in the insurance application will be imputed to the insurance company." *Kula v. Prudential Ins. Co. of Am.*, 612 F. Supp. 1077, 1080 (E.D. Mich. 1985)(citing *Howard v. Golden State Mut. Life Ins. Co.*, 60 Mich. App. 469, 231 N.W.2d 655 (1975)).

<div align="center">**Whether Wiggins' Answers Constituted Misrepresentations**</div>

<div align="center">**Question 12a**</div>

Question 12a on the initial application and renewal applications inquired whether Wiggins had his legal license or authority to practice law "revoked." Wiggins answered "no" to the question, even though his license had been suspended. On April 4, 1994, the Attorney Discipline Board suspended Wiggins for 120 days as a result of his conviction for resisting/obstructing a police officer.[3] *See* Chicago's Mot. Ex. G. Commonwealth argues that Wiggins did not misrepresent his disciplinary history because his legal license only was "suspended," not "revoked."

According to Webster's dictionary, the term "revoke" means "to annul by recalling or taking back" or "to bring or call back." *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1986 ed.). This definition does not include a temporal requirement and

---

[3] The Michigan Court Rules provide that an attorney whose license is suspended for 179 days or less "is automatically reinstated by filing with the Supreme Court clerk, the board, and the administrator an affidavit showing that the attorney has fully complied with the terms and conditions of the suspension order." MCR 9.123(a).

therefore, on its face, the use of the term "revocation" could encompass both a temporary and permanent "taking back" of one's license. However as pointed out by Commonwealth's expert, Lawrence A. Dubin, under Michigan's disciplinary system for members of the Michigan Bar, revocation of one's license is not the equivalent of a temporary suspension.[4] *See* Commonwealth Resp. Ex. 6 at 16-17. In other words, the terms revocation and suspension– as understood by members of the Michigan Bar– do not mean the same thing. Revocation of one's license, commonly known as disbarment, means the attorney "is no longer a member of the State Bar in any form and his name is stricken from the roll of attorneys." *See id*. at 16. Furthermore, while an attorney whose license has been revoked may apply for reinstatement, he or she must wait to apply for at least five years from the effective date of the order of revocation. *See id*. at 16-17.

While this Court's focus must be on how the "ordinary layperson" would understand the terms used in the insurance application, it seems logical that the Court must consider the type of insurance being sought to determine who the ordinary applicant would be. In other words, the ordinary applicant for professional liability insurance coverage is not necessarily equivalent to the ordinary applicant for life or health

---

[4] The Court agrees with Chicago that a party should not be allowed to present "expert" testimony that merely offers a conclusion or opinion as to whether an ambiguity exists. Thus the Court will not consider the opinion of Commonwealth's expert, Lawrence A. Dubin, that there is an ambiguity in any of the questions in the insurance application. However Mr. Dubin can testify to his understanding of the disciplinary practices applicable to members of the Michigan Bar, as such testimony provides specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue. *See* FED. R. EVID. 702.


insurance. As to the former group, the insurance company may ask questions specifically pertinent to the relevant profession that may be understood differently by professionals in that area than other individuals. Therefore, this Court believes it only is proper to evaluate the questions posed from the viewpoint of the ordinary person in the particular profession. For that reason, while a non-lawyer may not discern a distinction between the terms "revocation" and "suspension," Commonwealth presents evidence demonstrating that a lawyer would understand the terms to mean different things. As Michigan law provides that any ambiguity must be construed in the insured's favor, the Court finds that Wiggins did not misrepresent his disciplinary history in answering "no" to Question 12a.

### Question 12b

Question 12b on the initial application and renewal applications inquired as to whether Wiggins had "[b]een subject to disciplinary action by any state or local bar or ABA." Wiggins again answered "no," even though he in fact had been suspended once and reprimanded twice by the Attorney Disciplinary Board. Commonwealth contends that this was not a misrepresentation because the Attorney Disciplinary Board is neither a "state or local bar" or the "ABA."

As Mr. Dubin explains, in Michigan, the Supreme Court is charged with the exclusive constitutional authority to supervise and discipline attorneys licensed to practice in the State. *See* Commonwealth Resp. Ex. 5 ¶ 6; Ex. 6 at 1. Effective October 1, 1978, the Michigan Supreme Court has delegated the authority to adjudicate rule violations to the Attorney Discipline Board. *See id*. at 3. This Board is an arm of the Supreme Court,

not an arm of the State Bar. *See id.* To cover the distinctions in the various states with regard to attorney discipline, Commonwealth points out that many insurance companies more broadly inquire whether a lawyer has been disciplined "by any court or administrative agency," as well as any state or local bar. *See* Commonwealth Resp. Ex. 7 ¶ 18. In fact, in its "New Lawyer Supplemental Application," Chicago asks whether the lawyer has been disciplined "by any court or administrative agency." *See id.* Ex. 7a ¶ 5.

As the question actually posed to Wiggins was limited to "any state or local bar" and "the ABA" and Wiggins was not suspended and disciplined by a state or local bar or the ABA, the Court cannot conclude as a matter of law that he made a material misrepresentation by answering "no" to Question 12b.[5] However the Court also cannot conclude, as a matter of law, that Wiggins answered Question 12b truthfully. As discussed previously, the Court believes it must evaluate the questions posed from the viewpoint of the ordinary person in the particular profession. The Court further believes that there is a material issue of fact whether such a person would conclude that Question 12b should have been answered "yes," even though technically Wiggins had not been disciplined by the Michigan bar, a local bar, or the ABA.

---

[5] For the first time in its response to Commonwealth's counter-motion for summary judgment, Chicago construes the question as asking whether the applicant has been disciplined by "any state," "any local bar," or the ABA. The Court finds such an interpretation to be a tortured reading of Question 12b, as such a reading would suggest that the insurance company only was inquiring about discipline by an attorney's local bar and not his or her state bar. Additionally, the Court believes that if this were the intended meaning of Question 12b, commas would have been necessary within the question.

11

## Question 12c

Question 12c asked whether Wiggins had "[b]een subject to any fine, reprimand or criminal penalty related to performance of professional services?" Wiggins again answered "no" to this question, even though he was subject to two reprimands and fined in connection with those reprimands and his suspension by the Attorney Disciplinary Board. Commonwealth argues that this was not a material misrepresentation because those reprimands and fines were not related to Wiggins' "performance of professional services."

The first reprimand, effective April 15, 1989, arose from Wiggins' conviction in Oakland County Circuit Court for resisting and obstructing a police officer, being a habitual offender, possession of a firearm while intoxicated, and use of cocaine. Clearly this reprimand was not related to the performance of professional services. The second reprimand and fine, effective July 21, 1994, resulted from Wiggins' filing of two frivolous lawsuits.[6] Wiggins filed one lawsuit on his own behalf against an appliance store and the second lawsuit on behalf of his wife against an automobile dealership. Commonwealth argues that this reprimand was not related to Wiggins' performance of professional services since he was not representing a member of the public but merely himself and his wife. This Court disagrees.

---

[6] According to the Attorney Discipline Board, "the lawsuits . . . were not supported by fact or law and . . . there was no basis [for filing the lawsuits] that was not frivolous." *See* Chicago Mot. Ex. G.

The plain language of Question 12c does not limit the inquiry to professional services the applicant performed on behalf of the public or clients. In this Court's view, a lawyer performs professional services whenever he or she performs the activities of a lawyer– such as drafting and filing a complaint. *See Home Ins. Co. v. Bullard*, Nos. 87-5849 and 87-5910, 1988 WL 71192 (6th Cir. July 11, 1988)(unpublished op.)(quoting *Bank of California, N.A. v. Opie*, 663 F.2d 977, 981 (9th Cir. 1981)(". . . to be considered a professional service, the conduct must arise out of the insured's performance of his specialized vocation or profession . . ."); *Vogelsgang v. Allstate Ins. Co.*, 46 F. Supp.2d 1319, 1321-22 (S.D. Fla. 1999)(refusing to limit "professional service" to claims by clients, and noting that "given the dual nature of the practice of law, an attorney's liability should be assessed depending on the particular role he was performing at the time the liability arose.") Thus a lawyer engages in professional activities or services regardless of whether he or she is acting on the behalf of himself or herself, a family member, or a client. The fact that Wiggins now claims that he only understood the question as applying to services rendered on behalf of clients is irrelevant, as the clear language of the question as understood by the ordinary layperson is controlling. The Court therefore concludes that Wiggins made a misrepresentation by answering "no" to question 12c.

## Materiality

The question remains, however, whether Wiggins' answer to 12c– and perhaps his answer to 12b– were material. In other words, whether Chicago would have denied coverage or increased the policy premium if Wiggins had answered "yes" to Questions

12b and 12c. Chicago presents evidence to argue that it would have denied coverage if Wiggins had answered *all three* questions differently or if he had accurately informed Chicago that his license previously had been suspended. *See, e.g.* Chicago Mot. Ex. J ¶ 11; Chicago Resp. Ex. Q ¶ 9. Commonwealth, however, presents evidence to challenge the veracity of Chicago's witnesses. The Court therefore finds a genuine issue of material fact as to whether Wiggins' misrepresentation(s) was material.

### Summary

The Court finds, as a matter of law, based on the unambiguous language used by Chicago, that Question 12a on the insurance application and renewal applications did not pose an inquiry requiring an affirmative answer by Wiggins. In comparison, the plain language of Question 12c required Wiggins to answer "yes" based on his 1994 reprimand. As to Question 12b, the Court finds a genuine issue of material fact as to whether an ordinary lawyer, with Wiggins' disciplinary history, would have answered "yes" to the question. Although the Court finds, as a matter of law, that Wiggins answered at least one question untruthfully, there is a material issue of fact as to whether this misrepresentation was material.

Accordingly,

**IT IS ORDERED**, that Plaintiff's motion for summary judgment is **DENIED**;

**IT IS FURTHER ORDERED**, that Intervening Defendant Commonwealth's Counter-Motion for Summary Judgment is **DENIED**;

**IT IS FURTHER ORDERED**, that the Chapter 7 Trustee's Cross-Motion for

Summary Judgment is **DENIED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Clay Phillps, Esq.
Jeffrey A. Goldwater, Esq.
Michelle Bracke, Esq.
David M. Blau, Esq.
John E. Curley, Esq.